United States District Court
Southern District of Texas
**ENTERED**
August 06, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBRICHEE D JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-314 |
| | § | |
| ANTHONY MACKEY JR, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that his Eighth Amendment right to be free of cruel and unusual punishment was violated by Defendant Anthony Mackey, Jr. while Plaintiff was incarcerated at the McConnell Unit of the Texas Department of Criminal Justice—Correctional Institutions Division (TDCJ-CID). Defendant filed a motion for summary judgment on June 18, 2018 to which Plaintiff responded on July 2, 2018 (D.E. 33, 34). For the reasons stated herein, it is respectfully recommended that Defendant Mackey's motion for summary judgment be denied and Plaintiff be allowed to proceed with his lawsuit.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is proper in this court because the actions about which plaintiff complains occurred in Bee County, Texas.

## BACKGROUND

The following recitation of facts is taken from Plaintiff's complaint and from his testimony at the Spears hearing held on October 25, 2017.[1]   On October 16, 2016, Plaintiff was directed to move to another cell.  Upon entering the prison section where the new cell was located, another offender, Aundrey Curry, asked Plaintiff into which cell he was moving.  Plaintiff responded that he was moving into Cell 64.  Curry told Plaintiff that he was "not accepting no celly."  Plaintiff notified an officer about his interaction with Curry.

Sergeant Mackey was dispatched to the prison section to resolve the dispute. After obtaining some information, Mackey confronted Curry and asked him why he did not want Plaintiff as a cell mate.  Curry responded that he was not going to allow Plaintiff or anyone else into his cell.  Curry then blocked the cell door entrance.  Mackey warned Curry that he would be placed in segregation if he continued to refuse to allow Plaintiff to enter the cell but Curry continued to refuse.

After a few minutes, Plaintiff suggested that he was willing to be placed in another available cell.  Mackey responded that Plaintiff was going to be housed with Curry. Mackey ordered Curry to submit to hand restraints and Curry told Mackey "to go ahead and move" Plaintiff into the cell and that he would "take care of it himself."  Mackey then asked Curry what he was planning to do once Plaintiff was placed inside the cell. Curry did not respond to Mackey as he walked out of the cell to "his Jumada service."

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996)(stating that testimony given at a Spears hearing is incorporated into the pleadings).

Curry subsequently returned to the cell prepared to fight. Curry ignored Plaintiff's attempt to reason, charged into the cell, and brutally attacked Plaintiff. Plaintiff suffered a laceration to his right ear that required stitches, blurred vision in his right eye, and throbbing headaches. Curry did not suffer any injuries.

Following the altercation, both Plaintiff and Curry were charged with disciplinary violations. Plaintiff was found guilty of engaging in a fight without a weapon and punished with loss of privileges and also a reduction in line class which caused him to lose eligibility for parole.

Plaintiff claims that Sergeant Mackey's actions violated his Eighth Amendment right in that he failed to protect Plaintiff when he placed him with a dangerous inmate. Plaintiff seeks monetary, declaratory, and injunctive relief. In his motion for summary judgment, Defendant Mackey argues that where is sued in his individual capacity he did not fail to protect Plaintiff's constitutional rights and that he is entitled to qualified immunity. Defendant further argues that to the extent he is sued in his official capacity he is entitled to Eleventh Amendment immunity. Plaintiff counters that genuine issues of material fact preclude summary judgment in this case.

## APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

3 / 9

The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.*

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Milchalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.*

4 / 9

Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001).

## B. Qualified Immunity

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).   To discharge this burden, a plaintiff must satisfy a two-prong test. *Atteberry,* 430 F.3d at 251-252.   First he must claim that the defendant committed a constitutional violation under current law. *Id.* (citation omitted).   Second, he must claim that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the actions about which he complained. *Id.*   While it often will be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

## C.  Eighth Amendment Violation

Prison officials have a constitutional duty to protect prisoners from violence by other prisoners.  *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994)).  The duty arises under the Eighth Amendment prohibition against cruel and unusual punishment.  *Farmer*, 511 U.S. at 822-823.

To prevail on a "failure to protect" claim, a prisoner must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm and (2) the prison official was "deliberately indifferent to the harm."  *Id.*  at 834.  A prison official is "deliberately indifferent" when he knows of and disregards an excessive risk to inmate health or safety.  He must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and also draw the inference.  *Id.* at 837.  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact, subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Id.* at 842.  Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835. Only deliberate indifference will suffice to state a failure to protect claim; mere negligence is not sufficient.  *Id*. at 837.

Defendant Mackey does not appear to challenge the notion that prisoners have a constitutional right to be protected from harm from other prisoners and that the right was

well established at the time Plaintiff was attacked.  Rather, he argues that he did not know that Jackson and Curry were going to fight and given the information he had, his actions were objectively reasonable.

Mackey did not submit an affidavit in support of his motion for summary judgment, but in an unsworn statement he submitted as part of the disciplinary proceedings, he said he was not present at the time of the altercation.  "All I know is Curry refused to allow [Plaintiff] in cell and I warned him of consequences and he said 'Whatever' and both offenders went to chow.  We put [Plaintiff's] property in the cell. The next day I was told that they got in a fight." (Ex. A to Mot. for Sum. Jmt. at p. 16; D.E. 33-1 at p. 17).  In an administrative incident review prepared after the altercation, the officer who conducted the investigation stated that Plaintiff was moving into Curry's cell and that Curry "was not happy" with his cell mate and left for the dinner meal. Plaintiff was moved into the cell and unpacked his belongings while Curry was gone. When Curry returned he became confrontational and both offenders engaged in a one-on-one fight in front of the cell (Ex. B to Mot. for Sum. Jmt. at pp. 2-3; D.E. 33-2 at p. 4).

Plaintiff asserts that Curry told Mackey that he was not going to allow Plaintiff or any other inmate inside the cell with him and then blocked the cell door entrance. Mackey and Curry proceeded to argue about Plaintiff being house in the cell and Plaintiff suggested that he be placed in another cell but Mackey refused and stated that Plaintiff would be housed in the cell with Curry.  Mackey ordered Curry to turn around and submit to hand restraints at which point Curry told Mackey to go ahead and put Plaintiff in his cell and Curry would "take care of it himself."  Mackey then asked Curry what he

was planning to do and Curry did not respond but walked away.  As soon as Curry returned to the cell he attacked Plaintiff.

Mackey's statement that Curry responded with "Whatever" to a threat of a disciplinary infraction if he refused to allow Plaintiff to be housed in his cell does not necessarily support Mackey's contention that he did not realize Curry was a threat to Plaintiff.  At most it creates a fact issue.  A jury hearing Mackey's evidence, along with Plaintiff's testimony and the evidence that Curry caused Plaintiff physical injuries, could conclude that Defendant Mackey recognized a threat to Plaintiff but deliberately ignored it.  Accordingly, fact issues preclude entry of summary judgment on the issue of whether Mackey failed to protect Plaintiff from Curry's threat of violence.  Plaintiff should be allowed to proceed on his claims against Mackey in his individual capacity.

## D.  Eleventh Amendment Immunity

To the extent Plaintiff is suing Mackey in his official capacity, his claims are barred by the Eleventh Amendment.  It is well established that the Eleventh Amendment bars a suit for money damages against a state or state agency.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996).  An action against a state official in his or her official capacity is considered an action against the State itself and thus barred by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended Eleventh Amendment immunity to TDCJ-CID officers and officials acting in their official capacities.  *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).  Accordingly, to the extent Plaintiff is suing Defendants in their official capacities for money damages, his claims are barred by the Eleventh Amendment and should be dismissed.

8 / 9

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Defendant Mackey's motion for summary judgment (D.E. 33) be DENIED. Plaintiff should be allowed to proceed on his 42 U.S.C. § 1983 cause of action against Mackey.

Respectfully submitted this 6th day of August, 2018.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).